**MACDONALD | FERNANDEZ LLP**
Reno F.R. Fernandez III (SBN 251934)
221 Sansome Street, Third Floor
San Francisco, CA 94104
Telephone: (415) 362-0449
Facsimile: (415) 392-5544

Attorneys for Secured Creditor,
DAKOTA NOTE, LLC

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>**PSG MORTGAGE LENDING CORP.**,<br><br>　　　　　Debtor in Possession. | Case No. 21-30592-DM-11<br><br>Chapter 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CASE**<br><br>Date: TBD<br>Time: TBD<br>Place: Video or Telephone Only<br>　　　　(AT&T Teleconference or Zoom)<br><br>Honorable Dennis Montali |

## I.　INTRODUCTION

The within case is a classic "new debtor syndrome" case and should be dismissed. The Court is familiar with the storied history of the underlying real property and the years that have been consumed without any recovery for secured creditors. Most recently, a junior lender that foreclosed and took title to the property pursuant to its successful bid, namely PSG Capital Partners, Inc., recorded a transfer of the property to a new entity (the Debtor) on the day before the date scheduled for Dakota Note, LLC's trustee's sale. Less than two hours later, the Debtor commenced the within bankruptcy case. The Debtor's schedules disclose that there are literally no unsecured creditors, no operations and no significant assets other than the real property. Accordingly, the within case was filed in bad faith for the purpose of delaying Dakota Note's trustee's sale, and the case should be dismissed with a bar to filing a new case for 180 days.

1

## II. **FACTS**

The following facts are well established and are not reasonably subject to any genuine dispute:

### *Background*

1. On July 1, 2015, Brugnara Properties, IV, a California corporation, entered into a promissory note, as borrower, in the amount of $1,200,000 in favor of Dakota Note and Silicon Valley Funding Group, Inc.[1] See Exhibit "A" to the Declaration of Donald Kenoyer in Support of Motion for Relief from Automatic Stay filed on February 8, 2019 (the "First Kenoyer Decl.") as Docket No. 287-1 in the chapter 11 bankruptcy case before this Court styled as *In re Brugnara Properties IV* (Case No. 17-30501-DM) (the "Brugnara Case").

2. Dakota Note's claim is secured by a deed of trust against certain real property known as 224 Sea Cliff Avenue in San Francisco, California (the "Property"), recorded on July 21, 2015, as Document No. 2015-K093637-00 in the Official Records of the County of San Francisco, California (the "Official Records"). See Exhibit "B" to the First Kenoyer Decl. Dakota Note's lien is third in priority (First Kenoyer Decl., 2:15-18), junior to the liens of Wells Fargo Home Mortgage (first priority) and Paul Greenfield (second priority) (see Item 2.1 of Schedule A/B, Docket No. 18).

3. The interest reserve for the loan was exhausted in September of 2015, and the obligor never made a payment. Dakota Note's loan matured on January 10, 2016 (First Kenoyer Decl., 2:23-25). On July 14, 2016, Dakota Note served a notice of default and election to sell and recorded it in the Official Records as Document No. 2016-K286638-00. See Exhibit "D" to the First Kenoyer Decl.

### *The Brugnara Case*

4. The Brugnara Case was commenced on May 22, 2017 (Brugnara Case, Docket No. 1). The Brugnara Case was the fourth bankruptcy case filed by the same debtor, all involving the Property.

5. On February 8, 2019, Dakota Note filed a Motion for Relief from the Automatic Stay

---

[1] Thereafter, Silicon Valley Funding Group assigned its fractional interest in the Property to Dakota Note (First Kenoyer Decl., Exhibit "C").

in the Brugnara Case, requesting relief pursuant to Bankruptcy Code § 362(d)(1) and (d)(4) (Brugnara Case, Docket No. 287). On May 20, 2020, Dakota Note, PSG Capital Partners, secured creditor Paul Greenfield and the Chapter 7 Trustee filed a stipulation to entry of an order granting relief from the automatic stay to Dakota Note, PSG Capital Partners and Mr. Greenfield (Brugnara Case, Docket No. 493). The following day, on May 21, 2020, the Court entered an order approving the stipulation (Brugnara Case, Docket No. 500).

### ***PSG Capital Partners' Foreclosure***

6. On August 14, 2020, PSG Capital Partners held a trustee's sale, and the Property was transferred to it (PSG Capital Partners) as the successful bidder. See the Trustee's Deed recorded on October 9, 2020, in the Official Records as Document No. 2020028282, attached as Exhibit "A" to the Declaration of Derald Kenoyer, filed herewith (the "Second Kenoyer Decl.").

7. Thereafter, the Property has not been sold and has not generated any rent or other income, and Dakota Note has received no payment (Second Kenoyer Decl., 2:15-17).

### ***Dakota Note's Foreclosure***

8. On July 28, 2021, Dakota Note served its notice of trustee's sale and recorded it in the Official Records as Instrument No. 2021115814. The trustee's sale was scheduled for August 26, 2021 (Second Kenoyer Decl., Exhibit "B"; see also see Item No. 5.1 of the Statement of Financial Affairs for Non-Individuals Filing Bankruptcy filed on September 8, 2021 (Docket No. 18) (the "SOFA")).

### ***Transfer to Debtor***

9. PSG Mortgage, the Debtor herein, is a Delaware limited liability company formed by LegalZoom.com, Inc., on September 16, 2019 (Second Kenoyer Decl., Exhibit "C"). On the day before Dakota Note's scheduled trustee's sale (August 25, 2021), at 1:34 pm, the Corporation Grant Deed transferring title to the Property from PSF Capital Partners to the Debtor was recorded in the Official Records as Document No. 2021136349 (Second Kenoyer Decl., Exhibit "D").[2] In the deed, PSG Capital Partners declares that: "The grantors and grantees in this conveyance are comprised of

---

[2] The deed itself is dated a few days earlier on August 20, 2021.

3

the same parties who continue to hold the same proportionate interest in the property." The documentary transfer tax paid was "0.00."

***Voluntary Petition***

10. Less than two hours later, at 3:23 pm on the same date (August 25, 2021), the Debtor commenced the within case by filing its Voluntary Petition for Non-Individuals Filing Bankruptcy for relief under chapter 11 of the Bankruptcy Code (Docket No. 1).

11. The petition was signed by Philip M. Fusco as chief executive officer under penalty of perjury and by proposed counsel under Rule 9011 of the Federal Rules of Bankruptcy Procedure. Mr. Fusco is also PSG Capital Partners' chief executive officer (Second Kenoyer Decl., Exhibit "E").

12. The petition discloses that the Debtor's address is 16441 Scientific Way, Suite 250, in Irvine, California, which is the same address as PSG Capital Partners and Mr. Fusco (Second Kenoyer Decl., Exhibit "E").

13. The petition does not indicate whether the Debtor is a corporation, partnership or other entity (Item No. 6) and does not identify the Debtor as a single asset real estate debtor despite qualifying under Bankruptcy Code § 101(51B) (Item No. 7). Also, the Debtor's NAICS code is missing (Item No. 7). The List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders, attached to the petition, is blank.

***Schedules of Assets and Liabilities***

14. On September 8, 2021, the Debtor filed its schedules of assets and liabilities, its statement of financial affairs and its list of equity security holders, which were signed under penalty of perjury (Docket No. 18).

15. Schedule A/B discloses that the Property is the estate's only significant asset. The only other assets are desks and chairs purportedly worth $3,000 (Item No. 39), a computer purportedly worth $2,000 (Item No. 41)[3] and $100 on deposit with a bank (Item No. 3.1) in an account that has now been closed (SOFA, Item No. 18.1). Notably, the Debtor has no accounts

---

[3] Given that the Debtor and PSG Capital Partners share an office, it is doubtful that this office furniture is used only by the Debtor.

4

receivable (Item No. 11), no inventory or supplies (Items No. 18-22), no machinery, equipment or vehicles (Item No. 46) and no insurance (Item No. 73).

16. Schedule D discloses that the Property is encumbered by three liens, namely the liens of Wells Fargo Home Mortgage, Mr. Greenfield and Dakota Note.[4] These are the only creditors listed in any of the schedules.

17. Schedule E/F discloses that Debtor has no priority or general unsecured creditors.

18. Schedule G discloses no unexpired leases or executory contracts. Schedule H discloses no co-debtors.

**<u>Other Initial Documents</u>**

19. The SOFA, which was filed with the aforesaid schedules on September 8, 2021 (Docket No. 18), discloses that the Debtor has no operating business. Since its formation, the Debtor has had *total* income of $6,852,[5] with no income at all in 2020 or 2021 (SOFA, Item No. 1). Most of the SOFA is blank, further indicating lack of any substantive business activity.

20. The List of Equity Security Holders filed with the schedules on September 8, 2021 (Docket No. 18), discloses that Mr. Fusco owns 100% of the equity interests in the Debtor.

21. On the same date (September 8, 2021), the Debtor filed its Rule 2014 Verified Statement for Proposed Professional Julian Bach (Docket No. 19-1), which discloses that proposed counsel for the Debtor has also represented PSG Capital Partners and Mr. Fusco.

22. On the same date, the Debtor filed its Statement Pursuant to Rule 2016(b) (Docket No. 17), which represents that the Debtor paid a retainer of $11,738 (including filing fee) to proposed counsel and that the source of such funds was the Debtor's "earnings, wages and compensation for services performed…." As mentioned above, the Debtor's total income since its formation was $6,852, and there is no indication that the Debtor earns wages or compensation or performs any services. Neither the Rule 2016(b) statement nor the schedules or SOFA disclose any

---

[4] The Debtor marked every secured claim as "disputed" for apparently strategic purposes. It is important to note that PSG Capital Partners has never before challenged the validity, priority, extent or amount of Dakota Note's security interests and claim.

[5] Dakota Note suspects that this "income" was probably the entity's initial capitalization, probably in the form of contributions in kind of office furniture and a small amount of cash.

5

payment by PSG Capital Partners, Mr. Fusco or any other non-debtor.

## III. ARGUMENT

### A. THIS CASE SHOULD BE DISMISSED BECAUSE IT WAS COMMENCED IN BAD FAITH

The within case was commenced in bad faith, and the case should be dismissed. Pursuant to Bankruptcy Code §1112(b)(1), the Court must dismiss or convert a case if cause is shown. Bankruptcy Code § 1112(b)(4) provides a non-exhaustive lists factors that constitute cause; bad faith is not explicitly included, but it is frequently held to constitute cause for dismissal. "Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) (citations omitted).

The indisputable facts and circumstances of this case show bad faith. A finding of bad faith may be based on *either* objective or subjective criteria. *Id.* at 828; *United Enters., Ltd. v. ACI Sunbow, LLC* (*ACI Sunbow*), 206 B.R. 213, 221 (Bankr. S.D. Cal. 1997). In other words, a case should be dismissed if the circumstances indicate bad faith regardless of the debtor's subjective intentions. Courts consider a variety of factors to establish bad faith, including:

> (1) Does the debtor have only one asset? (2) Does the debtor have an ongoing business to reorganize? (3) Are there any unsecured creditors? (4) Does the debtor have any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments? and (5) Is the case essentially a two-party dispute capable of prompt adjudication in state court?

*In re St. Paul Self Storage*, 185 B.R. 580, 582 (9th Cir. BAP 1995) (format altered). Here, each factor is present pursuant to facts that are matters of record and are not reasonably subject to dispute. First, the Debtor's own Schedule A/B concedes that there are no significant assets other than the Property. Second, the schedules and the SOFA leave no room for doubt that the Debtor has no ongoing business. Third, there are literally no unsecured creditors in this case. Fourth, the Debtor has no cash flow or source of income. Fifth and finally, there are no other parties with significant interests (indeed, there are no other creditors of any kind) except for the Debtor on one side and secured creditors on the other.

///

6

### B. THIS CASE SHOULD BE DISMISSED BECAUSE IT IS A "NEW DEBTOR SYNDROME" CASE

One particularly egregious form of bankruptcy abuse has become known as the "new debtor syndrome."

> Indicia of the new debtor syndrome include: (1) transfer of distressed property into a newly created corporation; (2) transfer occurring within a close proximity to the bankruptcy filing; (3) transfer for no consideration; (4) the debtor has no assets other than the recently transferred property; (5) the debtor has no or minimal unsecured debt; (6) the debtor has no employees and no ongoing business; and (7) the debtor has no means, other than the transferred property, to service the debt on the property.

*Duvar Apt., Inc. v. FDIC*, 205 B.R. 196, 200 (9th Cir. BAP 1996), *citing In re Yukon Enter., Inc.*, 39 B.R. 919, 921 (Bankr. C.D.Cal. 1984). If the first two factors are satisfied, the burden of proof shifts to the debtor.

> A creditor can establish a prima facie case of bad faith filing by showing the transfer of distressed property to the debtor within close proximity to the bankruptcy filing. Once a prima facie case is established, the burden shifts to the debtor to demonstrate a good faith business reason for the transfer and the filing.

*Duvar*, 205 B.R. at 200 (citations omitted). Establishing these factors creates a rebuttable presumption of bad faith. *Yukon*, 39 B.R. at 921.

All of these factors are present here. First, PSG Capital Partners transferred the Property to a corporation formed relatively recently, in 2019, long after the start of the Brugnara Case and after the Court granted relief from the automatic stay in that case. In any event, it is apparent that the Debtor entity has had no significant business or assets during the time it sat on the shelf. *See Yukon*, 39 B.R. at 921 (including transfer to a "dormant entity" in this factor). Second, the Property was transferred to the Debtor very shortly before the petition was filed. At this point, the first two factors having been established, bad faith is presumed, and the burden of rebutting the presumption is upon the Debtor. *Duvar*, 205 B.R. at 200; *Yukon*, 39 B.R. at 921. The Debtor will be unable to offer sufficient evidence that is consistent with the petition, schedules, SOFA and other documents already filed to rebut the presumption of bad faith.

Continuing, third, there is no indication that the Property was transferred for any consideration; in fact, the form of deed utilized is for mere change in form of ownership, and no transfer taxes were paid. Fourth, aside from office furniture and $100, the Debtor has no assets other

7

than the Property.  Fifth, it bears repeating that the Debtor has literally no unsecured creditors.
Sixth, there is no dispute that the Debtor has no ongoing business and, hence, no employees (with
the possible exception of the Debtor technically employing its own officers). Seventh and finally,
with no significant assets and no operations, there can be no doubt that the Debtor has no means of
paying secured creditors other than the Property itself.

This case is similar to the unpublished opinion of *In re Virginia-Coast Highway Dev., Inc.,*
No. BAP.CC-06-1169-BKMO, 2006 WL 6811028 (9th Cir. BAP Dec. 26, 2006), in which the court
concluded that the following facts supported an award of sanctions under Rule 9011 of the Federal
Rules of Bankruptcy procedure for filing the petition in bad faith:

> 1. The Property was transferred to the debtor via three grant deeds, all recorded on the same day the petition was filed, 2. Debtor was formed approximately six weeks pre-petition, 3. There was no evidence that the transfers of the Property were for any consideration, 4. Debtor had minimal assets other than the Property, 5. The majority of the unsecured debt listed on debtor's schedules was owed to… debtor's principal shareholder, 6. Debtor had only one employee… and its only ongoing business was the construction of a single-family residence on the Property, and 7. The Property appeared to be the only means of servicing debtor's debt.

*Id.* at *1 (format altered).  The facts establishing new debtor syndrome are even stronger in the
within case, in which there are literally no unsecured creditors of any kind, no employees, no
business, no income and no assets (other than the Property) except for some office furniture and
$100.

Transferring the Property to a new, dormant entity and filing the petition literally on the eve
of foreclosure has the effect of improperly placing Dakota Note's collateral beyond its reach and
frustrating its trustee's sale.  Under the circumstances established above, the only reasonable
conclusion that can be drawn is that this interference with collateral and foreclosure was, in fact, the
purpose of filing the petition.

**C. DISMISSAL SUPPORTS THE BEST INTERESTS OF CREDITORS AND THE ESTATE MORE THAN CONVERSION**

Dismissal supports the best interests of creditors and the estate more than conversion.  11
U.S.C. § 1112(b)(1).  Virtually all of the authorities discussing the new debtor syndrome either
tacitly assume or conclude that the case should be dismissed rather than converted.  This is for good

8

reason; extending the life of a case filed in bad faith only further frustrates the legitimate efforts of secured creditors, who constitute the chief creditors and interests in the estate of a new-debtor-syndrome case.

## IV. CONCLUSION

In light of the foregoing, the within case should be dismissed with a bar to the Debtor filing a new petition for relief under any chapter of the Bankruptcy Code for 180 days, but the Court should retain jurisdiction for the limited purposes of considering sanctions.

DATED: September 15, 2021　　　　　　　　　　MACDONALD FERNANDEZ LLP

By: /s/ *Reno F.R. Fernandez III*
　　　Reno F.R. Fernandez III,
　　　Attorneys for Secured Creditor,
　　　DAKOTA NOTE, LLC

9